SWARTZFAGER *v.* SOUTHERN BELL TEL. & TEL. Co., et al.

No. 41062 April 6, 1959 110 So. 2d 380

*F. B. Collins, Melvin, Melvin & Melvin,* Laurel, for appellant.

*Deavours & Hilbun,* Laurel, for appellees.

Holmes, J.

The appellant, Mrs. Gladys Swartzfager, sued the appellees, Southern Bell Telephone and Telegraph Company and G. L. Martin, for damages for personal injuries which she sustained when a truck owned by the Southern Bell Telephone and Telegraph Company and driven by its employee, G. L. Martin, collided with an automobile which the appellant was driving.

The collision occurred between 2:30 and 3 o'clock on the afternoon of February 9, 1954, at the intersection of 10th Avenue and 12th Street in the City of Laurel.

Each side charged the other with negligence and the instructions of the court submitted to the jury the issue as to the alleged negligence of the respective parties. In addition, the appellees asked and were granted an instruction under our comparative negligence statute (Section 1454, Code of 1942). The jury returned a verdict in favor of the appellant for $3,000. The appellant made a motion for a new trial, assigning among other grounds the inadequacy of the amount of damages awarded, and from an adverse ruling thereon, she appeals, seeking a new trial on the issue of damages only. There is no cross-appeal.

The appellant complain on this appeal of the inadequacy of the verdict, and of alleged error in instructions granted to the appellees, and in the court's rulings on evidence. We have carefully considered the appellant's complaints as too the instructions granted to the appellees and as to the court's rulings on evidence, and are of the opinion that they are not well founded.

The only serious question presented for our solution is whether under the facts of this case and the instruction granted under our comparative negligence statute the verdict of the jury is so inadequate as to be deemed to evince bias and prejudice, justifying reversal.

Only two eye witnesses to the occurrence testified, namely, the appellant, Mrs. Gladys Swartzfager, and the appellee, G. L. Martin. The appellant testified that 10th Avenue runs generally in a north and south direction, and that 12th Street runs generally in an east and west direction; that on the occasion in question she was driving her automobile east on 12th Street approaching the intersection of 12th Street and 10th Avenue; that as she approached the intersection she was faced by a stop sign located at the intersection; that she stopped in obedience to the stop sign and looked both to the north and to the south on 10th Avenue; that she saw nothing approaching from the north but she saw

the truck of the appellees approaching the intersection from the south; that said truck, as she observed it, was about even with the third telephone pole south of the intersection, which distance was subsequently ascertained by measurement to be approximately 73 yards south of the intersection; that she then proceeded into the intersection without again looking to the south, and that her attention was next attracted by the sound of sliding of tires on the truck, and almost simultaneously therewith the truck ran into the side of her car, striking it at about the front fender near the front door; that the impact of the collision caused her head to strike the door post of her car and that she was rendered unconscious and remembered nothing thereafter until she regained consciousness in Oates' Clinic, to which she was taken after the accident. The proof showed that the collision occurred in the southeast corner of the intersection at a point east of the center line of 10th Avenue. The proof further showed that the truck of the appellees knocked the automobile of the appellant a distance of 40 feet north on 10th Avenue from the point of impact, and that the appellant's automobile came to rest on the east side of 10th Avenue with one of its front wheels in a ditch. The appellant further testified that she entered the intersection before the truck of the appellees reached the same, and that she had almost cleared the intersection when she was struck by the truck of the appellees.

The appellee, G. L. Martin, testified that at the time of the collision he was employed by the Southern Bell Telephone and Telegraph Company and was driving one of the Company's trucks in the course of his employment, and was proceeding north on 10th Avenue in the City of Laurel; that he was running about 30 or 35 miles per hour; that he first saw Mrs. Swartzfager approaching along 12th Street when he was about 200 feet south of the intersection; that as Mrs. Swartzfager approached

the intersection, she slowed down as though she were going to stop but that she did not stop but accelerated her automobile, and that when he realized she was not going to stop he was about ten or fifteen feet from the intersection; that he hit his brakes hard and his truck skidded into the intersection and into Mrs. Swartzfager's car. He further testified that his truck made skid marks on the pavement for a distance of 30 feet south from the point of impact. The testimony of other witnesses showed that the skid marks made by the company's truck extended south from the point of impact a distance of approximately 73 feet.

It will be observed that the evidence was conflicting on the issue of negligence of the respective parties, and that under appropriate instructions this issue was submitted for the determination of the jury.

 █ Since the appellees prosecuted no cross-appeal from the verdict and judgment of the court below, we must view as established the negligence and liability of the appellees. Dixon v. Breland, 192 Miss. 335, 6 So. 2d 122.

The evidence with respect to the injuries sustained by appellant and the permanent effect thereof, and the extent of her damage is undisputed. The appellant testified that when she regained consciousness in Oates' Clinic to which she was taken after the accident, she was "deathly sick" and nauseated; that the nausea continued for two days and nights and that she stayed in the Clinic about five days and was then permitted by the doctor to go home; that her nausea and headaches continued, and that as a matter of fact, they had continued up to the time of the trial, which was at the March 1958 term of the court, or a period of approximately four years from the date of the accident; that she was treated in the Clinic and after her return home by Dr. Charles R. Jenkins; that she was also treated

by Dr. Siegrist, a Laurel physician, and by Dr. H. Tharp Posey, a specialist of New Orleans, Louisiana.

The appellant further testified that from the time of the accident to the date of the trial she continued to suffer from headaches and nausea and was wholly incapacitated to do her household work and carry on her household chores; that at the time of the accident she was 40 years of age and was in good health and was able to do her household work, but that since her injury she had had to employ household help, entailing an expense of from $15 to $18 per week. The proof further showed that neither Mrs. Swartzfager nor her husband kept an accurate account of the expenses incurred by the appellant for doctors and medical bills and treatment. There is definite proof, however, that the appellant incurred a bill of $140 to Dr. Posey, a bill of $101 to meet the doctors and hospital bill at the time she was first injured, and a bill of $127 to a Dr. Ramsey, and a bill of $76 for x-rays, making a total of $444. The proof further is definite and undisputed that she incurred an expense of $15 per week over the four-year period from the time of the accident to the date of the trial, amounting to the total sum of $3120, and that this sum added to the medical expense of $444, aggregated a total outlay by the appellant of $3564 for doctors and medical expenses and treatment and expenses for household help to the date of the trial.

Dr. Charles R. Jenkins testified that he was connected with Oates' Clinic and was at the Clinic on the occasion when Mrs. Swartzfager was brought there following the accident. He said that he observed her and that she was dazed and mentally confused and did not know where she was and was unable to give a history as to how she had gotten hurt; that he examined her and had x-rays of her taken, and the x-rays were negative as to a fracture of the skull. He said that he found a contusion on the right side of her head, and a contusion of

the chest wall along the region where the third rib joins the breast bone; that there was a slight separation where the third rib joins the breast bone and a separation where the cartilage joins the rib at the breast bone. Dr. Jenkins further testified that from his examination of Mrs. Swartzfager it was indicated that she had a concussion, meaning a brain injury following a blow. He said that he treated her for three days in the Clinic during which time she complained of headaches, dizziness and vomiting, and that she continued these complaints after she returned home. He said that he saw her again on February 26 and that her reflexes had become hyperactive; that the patella, biceps and triceps were hyperactive in their responses, indicating that she had some residual trouble in the brain in the way of a concussion. He saw her again on March 26 and found that she was still dizzy, still nauseated, and still having headaches. He continued to treat her and on April 23, he recommended that she see a neurologist, since she had symptoms that could very well be indicative of a more serious brain injury than he had found. Dr. Jenkins further testified that the personality of the appellant had changed, and that he had recommended that she see a neurologist because he felt that he himself had done all that he could for her as a general practitioner.

Mrs. Swartzfager was treated by Dr. Siegrist, who also recommended that she consult a specialist. On the recommendation of the appellant's brother-in-law, Dr. Jimmy Swartzfager, the appellant consulted Dr. H. Tharp Posey, an outstanding neuropsychiatrist of the City of New Orleans. Dr. Posey treated the appellant from the 13th day of March 1957, through October 1957. He said that he first saw the appellant and examined her on March 13, 1957, and that at that time she gave him a history of having been involved in an accident in February 1954, and of her subsequent suffering from headaches, pain in the neck, dizziness, asthenia, loss of

interest, depression, general withdrawal from her former activities, and that he was also furnished with reports from Dr. Charles R. Jenkins of the Oates' Clinic at Laurel, and from Dr. W. Harvey Siegrist. He further said that from his examination of the appellant and the history of her complaints and the reports of the various doctors by whom she had been treated, it was his diagnostic opinion that Mrs. Swartzfager was suffering from three interlocking conditions: (1) post-traumatic encephalatrophy following upon a concussion; (2) whiplash injury of the neck; (3) a definite psychoneurosis. He explained that traumatic encephalatrophy "is an organic condition following concussions or contrusions, in which some cells are lost altogether by death, and others you might say, are weakened by the concussion." He was further asked: "Now, Doctor, in your opinion, is there any cure for that condition?" He answered, "No sir, there is no cure." Dr. Posey further testified that the appellant had a whiplash injury to the neck, and that this meant a pulling and straining of the muscular tendons of the neck, and that such condition does not readily yield to medication and treatment but would require long protracted periods of treatment. Dr. Posey was definite in his opinion that the injury which the appellant had suffered was permanent and that it incapacitated her to perform her usual and customary duties and chores, saying, "Mrs. Swartzfager cannot even perform her own intimate duties, much less go out in the world and perform a job."

The doctor further testified that he finally recommended that she return to her home and submit herself to the care of her local physician and have him supervise the medication and treatment which he would furnish the local physician. Dr. Posey explained that he did this for the reason that appellant's trips from Laurel to New Orleans were so upsetting to her that they were becoming injurious and he felt that it was to the interest

of the appellant that a local physician carry out the treatment and medication with which he would provide the local physician.

 ██ It will be observed from the foregoing undisputed testimony that the appellant as a result of the collision suffered a serious brain injury which is permanent and renders her incapacitated to perform her usual labors and chores, and that she will continue to suffer headaches and nausea as a result of such injury for an indefinite period of time. It will be noted that the appellant's actual outlay for doctors and medical expenses and for the hire of household help over the period from the date of the collision to the time of the trial in March 1958 amounted to the total sum of $3564, and that this exceed by the sum of $564 the amount of the jury verdict. It will be further noted that the damages awarded by the jury are wholly inadequate to compensate for future expenses for doctors' bills and medical treatments and household help, and for appellant's past and future pain and suffering, and that such substantial items of damages appear not to have been taken into consideration by the jury.

Considering the serious and permanent injuries which appellant has sustained, her actual financial outlay for medical and doctors bills and household help to the date of the trial, and expenses which she must necessarily incur in the future for doctors' and medical treatment and household help, and her pain and suffering endured and to be endured in the future, we think that the award of $3,000 was grossly disproportionate to any contributory negligence which the jury may have found attributable to the appellant. We are, therefore, of the opinion that the verdict is so grossly inadequate as to justify the conclusion that it is either the result of prejudice or a failure on the part of the jury to properly evaluate the appellant's injury and damages in relation to any

negligence which the jury may have found attributable to the respective parties.

A question similar to the one here involved was presented to this Court in the case of Lee v. Reynolds, 190 Miss. 692, 1 So. 2d 487. In that case the plaintiff sued the defendant for damages to himself and his automobile which were sustained when he was struck by the defendant's car on the highway. The plaintiff sustained serious injuries. There was an instruction under our comparative negligence statute. The jury returned a verdict for the plaintiff in the sum of $100. This Court, in reversing the lower court's judgment because of the inadequacy of the award said: "The question presented, therefore, is whether, under the facts and in view of an instruction under our comparative negligence statute (Code 1930, Sec. 511) the verdict is so inadequate as to evince prejudice justifying reversal." .

The Court, after detailing the injuries of the plaintiff, further said: "When the extent of the injury, with the resultant pain and suffering, is considered and the property damage and other losses are computed conservatively by any standard, it must necessarily and fairly total an amount, as to which an award of only one hundred dollars would be grossly disproportionate to any contributory negligence attributable to the plaintiff. . . . Regardless of the degrees of negligence properly attributable to the respective parties, we have no hesitancy in declaring the verdict to be so grossly inadequate as to evince prejudice; and if not the result of prejudice, it is due to an inadequate estimate of the total injuries suffered, or to an unjust appraisal of the degree to which the plaintiff's negligence, if any, contributed to such injuries."

What was said in the case of Lee v. Reynolds, supra, is particularly applicable to the case at bar. We have accordingly concluded that the judgment of the court below should be and it is affirmed as to liability and

reversed and remanded for trial on the issue of damages only.

Affirmed as to liability and reversed and remanded for trial on issue of damages only.

*Roberds, P. J.,* and *Hall, Lee* and *Kyle, JJ.,* concur.